**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **MARGARETTE DUVERGER,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**RESEARCH STRATEGIES, INC.**, an Alabama corporation,<br><br>*Defendant*, | No. 0:21-cv-62465-RAR<br><br>**CLASS ACTION** |

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Duverger moves to certify a class of the thousands of consumers whose cellular telephone numbers Research Strategies purchased and then called using a prerecorded voice as part of a single calling campaign in October 2021 in violation of the Telephone Consumer Protection Act's robocalls provision, 47 U.S.C. § 227(b)(1)(A)(iii).

This case is well-suited for class certification because it involves a single campaign of calls made using the same prerecorded voice message to telephone numbers sourced in the same manner. The central and determinative issues in this case will be (1) whether Research Strategies' calls were made using a prerecorded voice; (2) whether Research Strategies' calls were made to cellular telephone numbers; and (3) whether Research Strategies had prior express written consent, as defined under the TCPA, to make the calls. And these issues will be resolved based on common, class wide proof, including documents, data, and testimony from Research Strategies, its dialer provider, the companies it purchased leads from, and Plaintiff's expert.

Class certification is therefore warranted.

**FACTUAL BACKGROUND**

This case is straightforward. Research Strategies is a "business-to-business market research company" that conducts and otherwise assists other businesses in conducting surveys and similar consumer studies. Complaint (ECF 1) at ¶¶ 15-16; Answer (ECF 23) ¶¶ 15-16.

In October 2021, as part of a single campaign for a single business client seeking to conduct a mock trial in South Florida, Research Strategies made thousands of prerecorded calls, including to cellular telephone numbers like Plaintiff Duverger's, that either were answered or resulted in voicemails. Kaufman Declaration [attached as Exhibit 1] at ¶ 2 & Exhibit A (email from Research Strategies' counsel identifying 5,953 prerecorded voice calls as part of the campaign resulting in a call to the Plaintiff). The identical prerecorded message used during each of these calls stated:

> Research Strategies is looking for research participants that are between the ages of 18 and 76 to participate in a mock trial in Miami Dade County, Florida. The sessions are on Friday, October 8, from 9 am to 3 pm Or 3:30 pm To 9:30 pm. You will be paid $250 for attending. A light lunch or dinner will be provided. Please call 866-660-2910. If you leave a message, please include a daytime contact number. Our website is researchstrategiesinc.com. Thank you.

*Id*. at ¶ 3 & Exhibit B (audio file of prerecorded call from Plaintiff's cellular telephone).

Research Strategies purchased the consumers' telephone numbers that it called for this campaign from Database USA, Experian, and/or Exact Data. *See* Research Strategies' responses to interrogatories [attached as Exhibit 2] at no. 8. Importantly, because all three of these companies source the data they sell from private and "publicly available sources", they do not have consent to call from the consumers whose data they sell to companies like Research Strategies (without the consumers' knowledge). Kaufman Decl. at ¶ 4 & Exhibits C-E.

**THE TELEPHONE CONSUMER PROTECTION ACT**

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a

staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

Specifically, the TCPA makes it "unlawful" to "make any call" "using … an artificial or prerecorded voice" to any "telephone number assigned to a … cellular telephone service" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). And it provides a minimum of $500 in statutory damages for each violation. *Id*. at § (b)(3).

As a remedial statute that was passed to protect consumers from unwanted automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). "If proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer." *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017).

## THE PROPOSED CLASS

Plaintiff Duverger seeks to certify the following class pursuant to Rule 23(b)(3):

**Pre-recorded No Consent Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Research Strategies called (2) on their cellular telephone number (3) using the identical prerecorded voice message used to call the Plaintiff.

The proposed class is defined based exclusively on objective criteria. The class and is therefore ascertainable because "it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021).

## ARGUMENT

A class should be certified if it satisfies the four requirements of Rule 23(a) and at least

3

one subsection of Rule 23(b). *See* Fed. R. Civ. P. 23; *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321-22 (11th Cir. 2008); *DeLeon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1218 (11th Cir. 2007) ("In light of the fact that Rule 23 provides a district judge with great flexibility to adopt appropriate procedures, certify conditionally, or decertify a class in later stages of litigation, … judges should err in favor of certification.").

To meet Rule 23(a)'s prerequisites, a plaintiff must demonstrate that:

1) The class is so numerous that joinder is impracticable;

2) There are questions of law or fact common to the class;

3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1-4).

Here, the Plaintiff seeks certification under Rule 23(b)(3). *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). Rule 23(b)(3) further mandates that plaintiffs demonstrate that common questions of law or fact "predominate over any questions affecting individual members" and that maintaining a class action "is superior to other available methods" of adjudication.

Plaintiff's proposed class meets all of Rule 23(a) and (b)(3)'s requirements.

I. **Rule 23(a) is Satisfied.**

   a. **The Class is Sufficiently Numerous.**

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (more than 30 class members satisfy numerosity).

4

Here, Research Strategies' prerecorded calling campaign that resulted in a call to the Plaintiff involved more than 5,000 calls, including more than 1,000 calls that were live answered and more than 3,000 calls that were answered by answering machines. Kaufman Decl. at ¶ 2. The majority of these calls are statistically likely to have been made to cellular telephone numbers. *See, e.g.,* National Health Interview Survey [attached as Exhibit 3] at 1 ("Estimates in this report are based on the first six months of 2020. During this time period, 62.5% of adults and 73.6% of children lived in wireless-only households"). And Plaintiff's expert has proposed a methodology for identifying precisely which telephone numbers in the call logs maintained by the prerecorded dialing platform resulted in the transmission of a prerecorded message to an absent class member's cellular telephone number using data maintained and relied on by telephone companies to route calls. Woolfson Declaration [attached as Exhibit 4] at ¶¶ 23-27 & n.6.

Numerosity is therefore satisfied.

### b. Common Questions Exist Regarding Research Strategies' Liability.

Rule 23(a)(2) next requires that there is "a common question of law or fact among the members of the class." As the Supreme Court has explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" such that "all their claims can be productively litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The common questions must generate common "*answers*" that are "apt to drive the resolution of the litigation." *Id*. (citation omitted). Commonality is thus satisfied where the claims of all class members "depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Under this "relatively light burden," the class action "must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). Accordingly, it is "not just the presence of common questions that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015).

The common questions of law and fact to be determined in this action include whether the calls to class members were made using a prerecorded voice, to cellular telephone numbers, and without consent. *See, e.g., Johnson v. Comodo Group, Inc.*, No. 16-4469 (SDW) (LDW), 2020 WL 525898, at *10 (D.N.J. Jan. 31, 2020) (whether a certain type of recorded message violates the TCPA is a common questions). These legal and factual questions are shared by class members and will be resolved based on common proof, including call logs from the single dialing platform used to make the calls for the single prerecorded calls campaign at issue, evidence of how the telephone numbers that were called were sourced, and expert testimony.

Commonality is therefore satisfied.

   c. **The Plaintiff's Claims are Typical.**

Generally, typicality is satisfied where the claims are based on the same legal remedial theory. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality is satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Yet, the "[c]lass members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v.*

*Walt Disney World Co.,* 692 F.3d 1212, 1216 (11th Cir. 2012). The required nexus exists "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *See Ault,* 692 F.3d at 1216. Typicality is satisfied in TCPA cases where the claims are based on the defendant's homogenous calling campaign. *See McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 169-70 (S.D. Cal. 2019) (plaintiffs "raise claims and legal theories typical of the class they seek to represent—a class of individuals who did not consent to receive calls to their cellular phones made by or on behalf of Royal with a prerecorded voice and/or an ATDS").

Here, Research Strategies has called the Plaintiff's cellular phone number using the same prerecorded voice message used to call all other class members' cellular phone numbers based on purchasing their numbers from companies that had not obtained their consent to be called. Duverger Declaration [attached as Exhibit 5] at ¶¶ 2, 5.

Typicality is therefore satisfied.

### d. Plaintiff and Her Counsel Have Demonstrated the Commitment and Competency Needed to Prosecute the Class Claims.

Rule 23(a)(4) requires that the class representative can fairly and adequately protect and represent the interests of each member of the class. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem* at 625-26 (1997). Rule 23(a)(4) "requires courts to ask whether Plaintiffs' interests are antagonistic to the interest of other members of the class." *Id*. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted).

Plaintiff has no conflicting interests with class members. In fact, by investigating, filing, and vigorously prosecuting this case, she has demonstrated a desire and ability to protect class members' interests. Plaintiff has worked with counsel to develop the class claims, responded to requests for production and interrogatories, and has otherwise participated in the litigation. Duverger Decl. at ¶¶ 6-9.

Just as the Plaintiff is committed to the prosecution of this case, so too are her lawyers, who request appointment as class counsel. Plaintiff's counsel have extensive experience in consumer rights and class action litigation. Plaintiff's counsel have been appointed as lead class counsel in several TCPA cases. *See Ikuseghan v. Multicare Health Sys.*, No. C 14-5539 BHS, 2015 WL 4600818, at *6 (W.D. Wash. July 29, 2015) (finding adequacy satisfied where Plaintiffs' counsel served as counsel "in other class action lawsuits, including a previous TCPA case"). And Plaintiffs' counsel have dedicated substantial time and financial resources to the investigation and prosecution of the claims at issue and will continue to do so. Kaufman Decl. at ¶¶ 5-6, 8-11.

## II.   **Rule 23(b)(3) Is Satisfied.**

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied for the proposed classes in this case.

### a.  **Common Issues Predominate.**

TCPA claims, by their nature, involve large numbers of plaintiffs who received identical telemarketing contacts, a small number of defendants, and a common course of conduct that

affected each plaintiff in the same way. And that is precisely the circumstance here. Indeed, as the Seventh Circuit Court of Appeals stated regarding TCPA cases in *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." As the Supreme Court has held, while Rule 23(b)(3) requires a showing that questions common to the class predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S. Ct. 1184, 1191 (2013). "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.*

The factual circumstances pertaining to the proposed class are substantively identical. Research Strategies purchased lists of telephone numbers that included cell phone numbers and called them using the same prerecorded message as part of a single campaign for a single business client. Class members were harmed in the same way, through the receipt of an unsolicited, prerecorded call, and their damages are based on a fixed arithmetic calculation.

The predominance analysis "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 809 (2011). Courts routinely certify TCPA claims because the elements are amenable to classwide proof. Each element of the Plaintiff's claim focuses on the conduct of Research Strategies. The Plaintiff must establish three elements to prove her claim: (1) that an artificial or prerecorded voice (2) was used to place calls (3) to her telephone numbers assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). Each of these elements will be proven with common evidence. As will Research Strategies' lack of consent to make the calls and class members' standing.

9

Use of prerecorded voice. Whether Research Strategies used a prerecorded voice to make calls to members of the classes is common to all proposed class members. *See, e.g.*, *Comodo Group*, 2020 WL 525898 at *10. The Plaintiff will use the call recording she received, the call records from the dialer Research Strategies used, testimony of Research Strategies' employees, and expert testimony to prove that Research Strategies used prerecorded messages to make the calls to the class.

Calls to cell phones. Common evidence also exists to show that calls were made to cell phones. Expert Aaron Wolfson will identify the cell phone numbers that received calls by running a series of database queries and using the *TelLingua* service, an industry standard for identifying if a telephone number was cellular at the time it was called. *See* Woolfson Decl. at ¶¶ 23-27 & n.6. Other courts have accepted similar methodology when certifying TCPA class actions regarding cell phones. *See Toney v. Quality Res., Inc.,* 323 F.R.D. 567, 580 (N.D. Ill. 2018).

Consent. A defendant is not liable under the TCPA for calls placed with the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A). *See Whelpley v. Comenity Bank*, No. 2:18-cv-433-FtM-99MRM, 2018 U.S. Dist. LEXIS 127432, at *9 (M.D. Fla. July 31, 2018) ("[e]xpress consent is not an element of a plaintiff's prima facie case [under the TCPA] but is an affirmative defense for which the defendant bears the burden of proof." quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)). Here, the issue of consent can be tried on a common basis based on the leads lists purchased by Research Strategies and Research Strategies and the companies that sold the leads lists employees' testimony regarding how the data was sourced. Courts regularly certify TCPA class actions where there is common evidence, like here, of the defendant's lack of consent to make the calls at issue. *E.g., Bridging Cmtys. Inc. v.*

*Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016); *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449, at *43 (S.D. Fla. June 26, 2018).

Standing. Article III standing for the proposed class is a common question because, by definition, all class members received the same prerecorded voice calls to their cell phone numbers and suffered the same injury (i.e., an intrusion upon seclusion, occupation of their phone, and distraction) traceable to Research Strategies' challenged conduct. *See, e.g., Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1269-70 (11th Cir. 2019). Standing in these circumstances does not turn on having felt subjectively wronged. *Id*. As a result, common issues predominate.

Predominance is therefore satisfied.

### b. A Class Action is the Superior Method of Adjudicating the Claims.

Rule 23(b)(3)'s second prong requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "A district court must evaluate this issue in comparative terms…." *Cherry*, 986 F.3d at 1304-05.

Here, because of "the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be … superior …." *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018).

Additionally, although not required, class certification here is administratively feasible because "the district court can locate the remainder of the class after certification." *Cherry*, 986 F.3d at 1303. Using the dialer records for Research Strategies' calling campaign and his proposed methodology, Plaintiff's expert Mr. Woolfson will be able to identify which of the phone numbers

in the call records that received prerecorded voice messages were assigned to a cellular telephone service at the time they were called by Research Strategies. Woolfson Decl. at ¶¶ 23-27 & n.6.

Class treatment is therefore superior to the alternatives.

## CONCLUSION

Plaintiff Duverger respectfully requests that this Court certify the class; appoint her as class representative and Kaufman P.A. and Law Offices of Stefan Coleman, P.A. as class counsel; and establish a deadline for submitting a proposed notice plan.

Dated: June 21, 2022            Respectfully submitted,

*/s/ Avi Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S. Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Counsel for Plaintiff and the putative class*